**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| ANDREW PERRONG, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOLDEN RULE INSURANCE COMPANY and AMERICAN SELECT PARTNERS, LLC<br><br>Defendants. | : | CIVIL ACTION FILE NO. 1:19-cv-1940<br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**Preliminary Statement**

1. Plaintiff Andrew Perrong ("Plaintiff" or "Mr. Perrong") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

2. Mr. Perrong alleges that Golden Rule Insurance Company ("Golden Rule Insurance") commissioned automated telemarketing calls to Mr. Perrong and other putative class members without their prior express written consent.

3. These calls were made pursuant to an arrangement between Golden Rule Insurance and American Select Partners, LLC ("American Select Partners"), a telemarketing agent for Golden Rule Insurance.

4. Mr. Perrong and putative class members never consented to receive these calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Mr. Perrong brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Golden Rule Insurance.

5. A class action is the best means of obtaining redress for the Defendant's wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

6. Plaintiff Andrew Perrong currently resides in Pennsylvania.

7. Defendant Golden Rule Insurance, Inc. is a domestic corporation with its principal place of business at 7440 Woodland Dr. in Indianapolis, IN with a registered agent of CT Corp., 150 West Market St., Suite 800 in Indianapolis, IN 46204.

8. Defendant American Select Partners, LLC is a Texas limited liability company with a principal place of business at 5050 Quorum Dr., Suite 450 in Dallas, TX 75254. American Select Partners engages in telemarketing conduct into this District and nationwide. American Select Partners also contracted with Golden Rule Insurance in this District to make the telemarketing calls at issue in this case.

**Jurisdiction & Venue**

9. This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA"), codified as 28 U.S.C. § 1332(d)(2). The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member

of the proposed Class of at least tens of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Further, Plaintiff alleges a nationwide class, which will result in at least one Class member from a different state.

10. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

11. The Court has personal jurisdiction over Golden Rule Insurance because of their registration with the State of Indiana. In addition, Golden Rule Insurance maintains its principal place of business in Indiana.

12. The Court has personal jurisdiction over American Select Partners because they engaged in nationwide telemarketing conduct, including into this District. Furthermore, it entered into a contractual relationship with Golden Rule Insurance in this District.

13. Venue is proper under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls were commissioned from this District and because the Defendants reside in this District.

**TCPA Background**

14. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls to Cellular Telephones

15. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an

automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

16. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

17. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

18. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The Growing Problem of Automated Telemarketing

19. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

20. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

21. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

22. *The New York Times* reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J.

(July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

23. A technology provider combating robocalls warned that nearly half of all calls to cell phones next year will be fraudulent. Press Release, First Orion, Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls in 2019 (Sept. 12, 2018), https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html

**Factual Allegations**

Call to Mr. Perrong

24. Plaintiff Perrong is a "person" as defined by 47 U.S.C. § 153(39).

25. Mr. Perrong's telephone number, (215) 208-XXXX, is registered to a cellular telephone service.

26. Mr. Perrong has also placed this telephone number on the National Do Not Call Registry.

27. Mr. Perrong was called by American Select Partners on April 11, 2019

28. When Mr. Perrong answered the call, there was a distinctive click and a pause, along with a "balloon popping" sound before the call was connected.

29. This click and pause is a telltale sign of a predictive dialer. The click and pause signifies the algorithm of the predictive dialer operating, the predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line. This click and pause is a telltale sign of a predictive dialer.

30. The click and pause signifies the algorithm of the predictive dialer operating, the predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line. As a result, the telemarketing activity shifts the burden of wasted time to call recipients.

31. The "balloon popping" sound is a telltale sound used by the ViciDial predictive dialer and is a sound that is copyrighted by ViciDial to indicate that the call was detected as a live person (and not a voicemail) and successfully connected to an agent at the other end.

32. A predictive dialer is an ATDS as that term is defined by the TCPA.

33. Because of the predictive dialer, Mr. Perrong was greeted with dead air for the call before the "balloon pop" and then finally a live person came on the line.

34. The Caller ID for the call was (409) 655-0288.

35. That Caller ID is a non-working "spoofed" number.

36. The fact that the Caller ID was spoofed is further evidence of the use of an ATDS, as it typically takes a computer dialing system to manipulate the Caller ID that will display on the call recipient's phone.

37. Eventually, "Jessica" of American Select Partners, using a scripted sales pitch, asked Mr. Perrong about insurance and promoted Golden Rule Insurance.

38. "Jessica" is believed to be Jessica Perez, an agent at American Select Partners.

39. Mr. Perrong also received an e-mail from "jperez@americanselecthealth.com" promoting the same product.

40. Plaintiff is not a customer of any of the Defendants and has not consented to receive telemarketing calls prior to the receipt of these calls.

41. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls and their privacy was improperly invaded. Moreover, these calls injured Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the class.

**Golden Rule Insurance's Liability for American Select Partners' Conduct**

42. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

43. In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

44. In fact, the Federal Communication Commission has instructed that sellers such as Golden Rule Insurance may not avoid liability by outsourcing telemarketing to third parties, such as American Select Partners:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent'

> marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

45. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

46. Golden Rule Insurance is liable for the American Select Partners telemarketing calls.

47. First, Golden Rule Insurance hired American Select Partners to originate new business using automated telemarketing calls.

48. Furthermore, Golden Rule Insurance could have restricted American Select Partners, and the third parties it worked with, from using automated telemarketing, but it didn't.

49. Golden Rule also accepted the benefits of American Select Partners illegal telemarketing by accepting insurance policies, despite the fact that those policies were generated through illegal telemarketing.

50. Golden Rule Insurance knew (or reasonably should have known) that American Select Partners was violating the TCPA on its behalf and failed to take effective steps within its power to force the telemarketer to cease that conduct. Any reasonable seller that accepts telemarketing call leads from lead generators would, and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

---

1 *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

51. Indeed, American Select Partners had previously received complaints about its TCPA violative telemarketing conduct.

52. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

**Class Action Allegations**

53. As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

54. The Class of persons Plaintiff proposes to represent is tentatively defined as:

> All persons within the United States to whom: (a) Golden Rule Insurance and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) that could have promoted Golden Rule Insurance's products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

55. Excluded from the Class are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

56. The Class as defined above is identifiable through phone records and phone number databases.

57. The potential Class's members number at least in the thousands. Individual joinder of these persons is impracticable.

58. Plaintiff is a member of the Class.

59. There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

a. Whether Defendant violated the TCPA by using automated calls to contact putative class members cellular telephones;

b. Whether Defendants placed calls without obtaining the recipients' prior express invitation or permission for the call;

c. Whether Golden Rule Insurance is vicariously liable for the telemarketing conduct of American Select Partners; and

d. Whether the Plaintiff and the class members are entitled to statutory damages because of Defendants' actions.

60. Plaintiff's claims are typical of the claims of class members.

61. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

62. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class

members, which will be ascertainable from records maintained by Defendants and/or their agents.

63. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

64. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA's Automated Call provisions

65. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

66. The Defendants violated the TCPA by (a) initiating automated telephone solicitations to cellular telephone numbers, or (b) by the fact that others made those calls on its behalf. *See* 47 U.S.C. § 227(b).

67. The Defendants' violations were willful and/or knowing.

68. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

## Relief Sought

WHEREFORE, for himself and all class members, Plaintiff requests the following relief:

A. Injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

B. Because of Defendants' violations of the TCPA, Plaintiff Perrong seeks for himself and the other putative Class members $500 in statutory damages per violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

C. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

D. An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

E. Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

DATED this 14th day of May, 2019.

PARONICH LAW, P.C.

By: /s/ Anthony I. Paronich

Anthony I. Paronich
Email: anthony@paronichlaw.com
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 485-0018
*Attorney for Plaintiff*