UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANDREW PERRONG, on behalf of himself and others similarly situated, | Case No. 1:19-cv-1940-JPH-DML |
| Plaintiff, | CLASS ACTION |
| v. | |
| GOLDEN RULE INSURANCE COMPANY and AMERICAN SELECT PARTNERS, LLC | |
| Defendants. | |

**PLAINTIFF ANDREW PERRONG'S MOTION TO DISMISS GOLDEN RULE INSURANCE COMPANY'S COUNTERCLAIM**

**INTRODUCTION**

Golden Rule's Counterclaim is nothing more than a contrived attempt to intimidate and bully a consumer for daring to hold it to account for its illegal telemarketing. The most basic of details to support the claim are entirely absent, and as such the claim falls far short of alleging fraud with particularity under Rule 9(b) of the Federal Rules of Civil Procedure.

Particularity is required to allege fraud in order to protect individuals like Mr. Perrong from the reputational harm that comes along with a public fraud allegation. The party alleging fraud must conduct a more thorough investigation than is typically required in order to ensure the claims have factual support. But here, Golden Rule and its attorneys have either (1) lobbed this claim at Mr. Perrong without even investigating the basic information Defendants were supposed to maintain (and purportedly relied upon) to meet their burden to prove consumers consented to their telemarketing calls; or (2) did an investigation but still don't have the facts to prove or even suggest Mr. Perrong consented to the call at issue in this case. Either way, the Counterclaim is

grossly irresponsible. Indeed, American Select Partners—the company who is alleged to have made the single call at issue in this case and who would have access to the same information as Golden Rule—has decided not to participate in this sideshow and has simply answered the Complaint. If Golden Rule ultimately wants to try to assert the affirmative defense of "*prior express consent*" despite *still* not having the basic details to support it, it is free to do so as the litigation proceeds. Golden Rule must not, however, be permitted to weaponize that affirmative defense against a consumer by re-labeling it as a fraud claim. Golden Rule's Counterclaim must be dismissed with prejudice.

## LAW AND ARGUMENT

**I.     Golden Rule failed to allege fraud with particularity as required by Fed. R. Civ. P. 9(b).**

      A.     *Fraud must be plead with particularity.*

Rule 9(b) of the Federal Rules of Civil Procedure states that a party who alleges fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "The particularity requirement of Rule 9(b) is designed to discourage a 'sue first, ask questions later' philosophy." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (citation omitted). "Heightened pleading in the fraud context is required in part because of the potential stigmatic injury that comes with alleging fraud and the concomitant desire to ensure that such fraught allegations are not lightly leveled." *Id.* at 442. Rule 9(b) therefore "force[s] the plaintiff to do more than the usual investigation before filing his complaint." *Hirata Corp. v. J.B. Oxford & Co.*, 193 F.R.D. 589, 592 (S.D. Ind. 2000) (quoting *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999), *cert. denied*, 145 L. Ed. 2d 151, 120 S. Ct. 178 (1999)). *See also Abner v. Jewish Hosp. Health Care Servs.*, No. 4:05-cv-0106-DFH-WGH, 2008 U.S. Dist. LEXIS 61985, at *3 (S.D. Ind. Aug. 13,

2008) ("The particularity requirement is intended to require more investigation before a complaint is filed to protect defendants from the harm that can result from the public accusation of fraud.").

To comply with Rule 9(b), the party alleging fraud must include "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Hirata*, 193 F.R.D. at 592 (quoting *Schiffels v. Kemper Fin. Servs., Inc.*, 978 F.2d 344, 352 (7th Cir. 1992)). "By requiring the plaintiff to allege the who, what, where and when of the alleged fraud, the rule requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Hirata*, 193 F.R.D. at 592 (quoting *Ackerman*, 172 F.3d at 469).

The elements of common law fraud are:

> 1) a false statement of past or existing material fact; 2) made with knowledge it was false or made recklessly without knowledge of its truth or falsity; 3) made for the purpose of inducing the other party to act upon it; 4) upon which the other party did justifiably rely and act; and 5) proximately resulting in injury to the other party.

*Sheridan Health Care Ctr. v. Centennial Healthcare Corp.*, No. IP 01-0186-C-M/S, 2001 U.S. Dist. LEXIS 24832, at *10-11 (S.D. Ind. June 19, 2001). Golden Rule has failed to properly plead those elements.

B. *Golden Rule's allegations fall far short of pleading fraud with particularity.*

Golden Rule's accusations in its Counterclaim do not come anywhere near meeting the particularity standard of Rule 9(b). All Golden Rule alleges is that Mr. Perrong went to a website (identified only by its homepage) and submitted contact information to receive an insurance quote. (*See* Doc. 18, ¶¶ 6-8.) Critically, Golden Rule doesn't allege anything at all regarding

when or where this alleged website visit occurred. Moreover, Golden Rule doesn't even allege a misrepresentation at all. Nor is it alleged that Mr. Perrong had any duty to disclose such that nondisclosure could be a basis for a fraud claim.

    1.    *Basic details such as the date/time and location of the alleged fraud are entirely absent.*

Golden Rule's utter failure to allege *anything whatsoever* about when or where the alleged website visit occurred is, on its own, grounds for dismissal of Golden Rule's Counterclaim. While Rule 9(b)'s requirements may be "tempered somewhat where a plaintiff alleging fraud does not have access to all the facts necessary to provide details," that is not the case here. *See Hirata*, 193 F.R.D. at 592.

Golden Rule has the burden to demonstrate that it in fact obtained Mr. Perrong's "prior express consent"[1] before calling him. *See Zeidel v. YM LLC USA*, No. 13-cv-6989, 2015 U.S. Dist. LEXIS 54455, at *8 (N.D. Ill. Apr. 27, 2015) (prior express consent is an affirmative defense upon which the defendant bears the burden of proof). In 2012, the FCC revised the TCPA's regulations to heighten the burden of proof for a telemarketer to assert a defense of "prior express consent" in response to a TCPA claim. *See Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd. 1830, 1838 (2012) (effective October 16, 2013) ("*2012 TCPA Order*"). Specifically, the FCC determined that "prior express *written*[2] consent" is required "for all telephone calls using an automatic telephone dialing system or a prerecorded

---

[1] The TCPA makes it unlawful to use an "automatic telephone dialing system or an artificial or prerecorded voice" to call a cell phone without "the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A).

[2] "The term prior express written consent means an agreement, *in writing, bearing the signature of the person called* that *clearly authorizes* the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8) (emphasis added).

voice to deliver a telemarketing message to wireless numbers and residential lines." *2012 TCPA Order*, 27 FCC Rcd. at 1838 (emphasis added). While prior express written consent may be obtained via a website form, an electronic record of the consumer's agreement still must be provided. *Id.* at 1844. Even then, the purported consent is valid *only if* a litany of important disclosures required by the Electronic Signatures in Global and National Commerce Act ("E-SIGN Act") were first provided to the consumer.[3] *See id.* at 1843-44; 15 U.S.C. § 7001 *et seq*. The FCC has further cautioned telemarketers that they must be able prove prior express consent clearly and unambiguously. *2012 TCPA Order*, 27 FCC Rcd. at 1844. ("[S]hould any question about the consent arise, the seller will bear the burden of demonstrating that a clear and conspicuous disclosure was provided and that unambiguous consent was obtained.").

    Golden Rule is therefore required to come forward with information about the alleged website visit, such as the date, a timestamp of the purported electronic signature, the URL for the specific webpage purportedly constituting consent, the IP address of the visitor (which would demonstrate the visitor's geographic location at that time), user agent string data, and the content of the webpage (together with any necessary disclosures) as it would appear to a visitor on the date of the alleged visit. Golden Rule cannot claim it does not have access to this information, as the owner of the website is Defendants' vendor it hired to generate leads for them. Moreover, any responsible telemarketer relying on consent from a webpage form would itself monitor this information and weed out potentially non-compliant or bogus leads. Indeed, how else would American Select Partners and Golden Rule have any idea the leads they were calling upon were legitimate?

    Even if Golden Rule could somehow claim that it was unable to access information from

---

[3] Such disclosures do not appear to be present on the website Golden Rule has identified in its Counterclaim. Mr. Perrong did not visit the website, but even if—purely for the sake of argument—he did, Golden Rule would be unable to rely on prior express consent as a defense.

5

its own vendor about the alleged website visit, that still wouldn't save its Counterclaim here.  The party alleging fraud must at a bare minimum "at least plead the identity of the person engaging in the alleged fraudulent act or acts and when that act or acts occurred"; however, Golden Rule is silent as to when the alleged fraud occurred.  *Hirata*, 193 F.R.D. at 598 (citing *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992) (dismissing fraud claim where complaint did not allege "basic factual averments" such as when the fraudulent act(s) occurred, finding the plaintiff "cannot expect simply to rest on its broad assertion that the fraud occurred over a period of six months.").

Even though the standard under the TCPA is "*prior* express written consent" and American Select Partners purportedly relied upon proof of the alleged website visit to call Mr. Perrong, Golden Rule still has not come forward with the most basic of details regarding its claim.  Golden Rule's attorneys are no doubt aware that fraud must be pled with particularity, but nonetheless, they have utterly failed to do so.  It stands to reason that if additional details would have supported Golden Rule's claim, they would have pleaded them.  They did not, which, ironically, only bolsters Mr. Perrong's claims in this case.

> 2. *Golden Rule does not allege it relied upon any misrepresentations, a key element of fraud.*

Golden Rule's fraud claim is not based on any misrepresentations and therefore fails as a matter of law because it fails as to a key element of fraud.  It merely alleges that Mr. Perrong went to a website and submitted his contact info to receive an insurance quote.  Along with pressing "Submit," all Golden Rule alleges is that Mr. Perrong agreed to the following disclosure:

> By clicking 'Submit' I provide my signature, expressly authorizing up to eight insurance companies or their agents or parent companies, including GoHealth, eHealth, or SelectQuote, to

6

> contact me at the number and address provided with insurance quotes, for marketing purposes, or to obtain additional information for such purposes ***using an automated telephone dialing system*** and/or an artificial or prerecorded voice, text messages, or email. I understand that my signature is not a condition of purchasing any property, goods or services and that I may revoke my consent at any time.

(Doc. 18, ¶ 7 (emphasis in original).)  The disclosure just says that the person clicking "Submit" authorizes insurance companies to contact them.  It doesn't say that the person is "interested in learning more about insurance products," or that the person is interested in "obtaining" "health insurance."  (*Id.*, ¶¶ 9-10.)  Those statements are Golden Rule's attorneys' statements—they are not alleged to be Mr. Perrong's.  Even taking everything in the Complaint as true, prior to the single call at issue, Mr. Perrong is not alleged to have made any communication to the unidentified website owner, to American Select Partners, to Golden Rule, or to anyone else that he was interested in learning about or obtaining health insurance.

The Counterclaim also alleges that after he received the single call at issue in this case, Mr. Perrong told the agent that the call was "out of the blue" and that this was allegedly a false statement.  However, this alleged statement cannot support a fraud claim.  First, there is no reliance on the statement, much less any detrimental reliance.  Golden Rule does not state how the caller relied on the statement or why the caller would have any reason to rely on it.  Moreover, the call at issue in this case was already made, and the only reliance Golden Rule alleges is the fact that American Select Partners contacted Mr. Perrong in the first place.  (*See* Doc. 18, ¶ 14.)  Indeed, Golden Rule only seeks damages for the attorney fees it has incurred and the "time and attention" its employees have had to expend in connection with this case.  (*Id.*, ¶ 15).  Second, this particular allegation just defies common sense.  If this whole case was really a "setup" as Golden Rule claims, why would Mr. Perrong tell the caller something that would

immediately suggest to the caller that he had *not* in fact consented to or requested the call?

Golden Rule then generally alleges without particularity that Mr. Perrong "continued to feign interest" in health insurance, but again, no reliance is alleged—the call giving rise to this case had already occurred. (*See* Doc. 18, ¶ 12.) In any event, there is nothing wrong with a consumer advocate posing as an interested customer in order to enforce federal law and to discover the identity of those responsible for contacting him. "Testers," who pose as interested individuals in order to identify other victims in the housing and employment context, "usually are praised rather than vilified." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374-75 (1982); *Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252 (1977)). The Federal Trade Commission, which is charged with the enforcement of federal telemarketing laws, regularly has investigators pose as potential customers, and courts have endorsed that approach. *See, e.g.,* Consent Decree, *United States v. Credit Bureau Collection Servs.*, No. 2:10-cv-169, Doc. No. 3, § X (S.D. Ohio Feb. 24, 2010) (authorizing FTC to use "lawful means," including "posing as consumers and suppliers" in order to monitor and investigate compliance with federal law). TCPA plaintiffs are permitted to engage in the same conduct: "Cognizant of how damaging May's evidence is, Defendants disparage her as a 'professional litigant'…. But the telemarketers' admissions are not rendered invalid just because Mey (successfully) tricked them into (truthfully) revealing that they sold products for Lifewatch." *FTC v. Lifewatch Inc.*, 176 F. Supp. 3d 757, 771 (N.D. Ill. 2016). *See also Shelton v. Nat'l Gas & Elec., LLC*, No. 17-4063, 2019 U.S. Dist. LEXIS 59235, at *12 (E.D. Pa. Apr. 5, 2019) ("The fact that he 'play[s] along' with telemarketing scripts to 'find out who [they] really are' is not as devious as Defendant suggests. A plaintiff must know the name of the telemarketer that violated the TCPA in order to bring suit against it …."); *Cunningham v.*

*Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1194-95 (M.D. Tenn. 2017) (noting that faking interest in calls showed plaintiff was acting to ascertain the identity of the calling party). As such, Golden Rule cannot allege that any of the unidentified statements Mr. Perrong made in the course of the call from American Select Partners were made to "defraud" Golden Rule or anyone else. Nor can Golden Rule allege that Mr. Perrong's failure to disclose that he was feigning interest in the illegal call he received constitutes an actionable misrepresentation. To allege fraud based on nondisclosure, there must be a duty to disclose those particular facts to the other party. *Koehler by Koehler v. Wyeth Labs. Div. of Am. Home Prods. Corp.*, No. NA 85-284-C, 1987 U.S. Dist. LEXIS 16861, at *15-16 (S.D. Ind. Sept. 8, 1987). Recipients of an illegal telemarketing call have no duty to tell the telemarketer that they are considering filing a lawsuit in advance of attempting to ascertain the parties responsible for the call, and Golden Rule does not allege any such duty. Indeed, courts have held that there is no duty to mitigate damages under the TCPA. *See, e.g., Powell v. W. Asset Mgmt.*, 773 F. Supp. 2d 761, 764 (N.D. Ill. 2011) ("courts that have considered whether a plaintiff has a duty to mitigate damages under Section 227 of the TCPA have found there is no such duty") (citations omitted).

**II.      Golden Rule's Counterclaim is simply its affirmative defense of consent.**

Golden Rule's Counterclaim amounts to nothing more than an assertion of its affirmative defense of consent. It should not be permitted to improperly recast that affirmative defense of consent as an illusory counterclaim for fraud, designed to threaten and intimidate consumers who would dare seek judicial redress for holding Golden Rule to account for its unlawful telemarketing.

Apart from pleading deficiencies, Golden Rule's maneuvering to turn its defense into an offense also fails as a matter of law. In similar circumstances as here, the court in *Buller v.*

9

*Owner Operator Indep. Driver Risk Retention Grp., Inc.*, 461 F. Supp. 2d 757 (S.D. Ill. 2006) dismissed the defendant's counterclaims, concluding that those "purported counterclaim[s] in fact are affirmative defenses." *Id.* at 766. In dismissing the counterclaims, the court further held that:

> "Affirmative defenses challenge ... underlying liability. Counterclaims are separate claims independent of the plaintiff's underlying claim." *FDIC v. F.S.S.S.,* 829 F. Supp. 317, 322 n.11 (D. Alaska 1993). In this case, the allegations of the counterclaim cannot be adjudicated separately from Buller's claims. *See MidAmerican Communications Corp. v. U.S. West Communications, Inc.,* 857 F. Supp. 772, 774 (D. Colo. 1994) ("Unlike a counterclaim, a defense cannot possibly be adjudicated separately from the plaintiff's claim to which it applies."). At most Risk Retention Group's purported counterclaim sets out grounds for avoiding or reducing liability, but it establishes no grounds on which the insurer could recover damages independent of Buller's claim. *See Hinfin Realty Corp.,* 206 F.R.D. at 354–55 (allegations of contributory or comparative fault asserted an affirmative defense, not a counterclaim).

*Id.* at 767. The court further explained, "As [plaintiff] Buller points out, the damages sought in the counterclaim are in fact the legal expenses [defendant] Risk Retention Group has incurred as a result of having to defend this case ... which expenses are not recoverable as items of damage …." *Id.* (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 269-70 (1975) (citing to "the familiar 'American Rule' generally prohibiting shifting of attorney's fees"). As in *Buller*, there are no damages alleged independent of the cost of defending Mr. Perrong's claim. Golden Rule only seeks damages for the attorney fees it has incurred and the "time and attention" its employees have had to expend in connection with this case. (Doc. 18, ¶ 15.)

If the Court were to permit Golden Rule's contrived Counterclaims to go forward, it would unquestionably deter future consumers generally from bringing TCPA claims, it would render a federal consumer protection statute, the TCPA, toothless, and it would encourage

unlawful telemarketers to proceed unimpeded in waging their campaigns without regard to governing law. Significantly, because "the TCPA is 'a consumer protection statute which is remedial in nature,' this Court must interpret the statute broadly" and certainly not allow it to be turned on its head and weaponized against consumers. *Heard v. Nationstar Mortg. LLC*, No. 16-cv-00694- MHH, 2018 WL 4028116, at *5 (N.D. Ala. Aug. 23, 2018) (quoting *Carmichael v. Nissan Motor Acceptance Corp.*, 291 F.3d 1278, 1280 (11th Cir. 2002) (remedial statutes "must be construed liberally in order to best serve Congress' intent")). Thus, courts in this and other circuits hold that the TCPA "should be liberally construed and should be interpreted (when that is possible) in a manner tending to discourage attempted evasions by wrongdoers." *Ammons v. Ally Fin., Inc.*, 326 F. Supp. 3d 578, 597-98 (M.D. Tenn. 2018). *See also Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1150 (N.D. Ill. 2014); *Hitchman v. Nat'l Enter. Sys., Inc.*, No. 12-cv-61043, 2014 WL 912363, at *3 (S.D. Fla. Mar. 10, 2014).

### III. The fact that Mr. Perrong has previously exercised his rights under the TCPA on numerous occasions does not change anything.

That Mr. Perrong is knowledgeable about his rights under the TCPA and experienced in enforcing the statue does not prevent him from enforcing it as many times as telemarketers continue to violate those rights.

Even if Mr. Perrong was motivated by the statutory damages offered by the TCPA, it does not mean his injuries are not within the statute's zone of interest or that he somehow committed fraud. Indeed, the statutory damages available under the TCPA are "specifically designed to appeal to plaintiff's self-interest and to direct that self-interest toward the public good." *Cunningham*, 251 F. Supp. 3d at 1195. As such, the TCPA encourages plaintiffs like Mr. Perrong to act as private attorneys general, with statutory damages operating as rewards, or "bounties," for catching telemarketers engaged in illegal practices to them. *See id*. *See also*

*Charvat v. Echostar Satellite, LLC*, 630 F.3d 459, 461 (6th Cir. 2010) ("Phillip Charvat has not been shy in taking on the role of a private attorney general under the [TCPA]."); *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876, 881 (8th Cir. 2005) (private right of action under TCPA demonstrates Congressional intent to incentivize aggrieved parties to act as "private attorneys general"); *Mey v. Venture Data,* 245 F. Supp. 3d 771, 784 (N.D.W. Va. 2017) ("While [defendant] is understandably frustrated by Ms. Mey's efficacy, she is doing exactly what Congress intended—enforcing the law.").

If the statutory damages available under the TCPA motivate plaintiffs to enforce the law, that does not "negate [plaintiffs'] right to privacy and seclusion" or cause them to forfeit those rights. *Cunningham*, 251 F. Supp. 3d at 1196. If the Court were to allow it to do so, it would be "embrac[ing] a line of reasoning that would ultimately undermine the rights of most, if not all, TCPA plaintiffs and plaintiffs in similar statutory schemes." *Id*. Indeed, this reasoning would limit standing only to those individuals who are ignorant of their rights under the TCPA and who, of course, would be highly unlikely to bring a lawsuit to enforce those unknown rights. *See id*.

Nothing about enforcing the TCPA on numerous occasions suggests fraudulent intent. Indeed, Mr. Perrong's litigation history demonstrates the opposite. None of Mr. Perrong's suits have been frivolous, nor has Golden Rule alleged as much. If Mr. Perrong was committing fraud all this time, the rudimentary "scheme" alleged here of entering information into a website to request a phone call would have been easily proven by now. It hasn't, because there is no such "scheme." Golden Rule's Counterclaim is filled with overly dramatic and inflammatory language, but at bottom, it simply lacks common sense.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court DISMISS Golden Rule's Counterclaim with prejudice.

Respectfully submitted,

**/s/ Jonathan P. Misny**
Jonathan P. Misny
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH  43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
misny@mmmb.com

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: 508.221.1510
anthony@paronichlaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2019, I served the foregoing document on all counsel of record who have entered an appearance via the Court's CM/ECF system.

**/s/ Jonathan P. Misny**
Jonathan P. Misny