**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| ANDREW PERRONG, on behalf of himself and others similarly situated, | : : : | CIVIL ACTION NO. |
| Plaintiff, | : : | 1:19-cv-01940-TWP-DML |
| v. | : : : | |
| GOLDEN RULE INSURANCE COMPANY | : : | |
| Defendant and Counter-Claimant | : : | |
| and AMERICAN SELECT PARTNERS, LLC | : : | |
| Defendant and Third-Party Plaintiff | : : : | |
| v. | : : | |
| DATAMAX, LLC | : : | |
| Third-Party Defendant | : : | |
| _____ | : | |

**DEFENDANT GOLDEN RULE INSURANCE COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF ANDREW PERRONG'S <u>MOTION FOR PROTECTIVE ORDER</u>**

Defendant Golden Rule Insurance Company ("Golden Rule"), by and through its undersigned counsel, hereby submits its Response in Opposition to Plaintiff Andrew Perrong's ("Plaintiff") Motion for Protective Order ("Motion"). In support, Golden Rule states as follows:

### I.   INTRODUCTION

Plaintiff does not dispute that the Internet Protocol ("IP") addresses that he has used to access the internet since January 1, 2019, are critically relevant to this case. Nor could he. Golden Rule alleges that Plaintiff visited the U.S. Insurance Online website (or directed someone else to visit it on his behalf) in order to solicit the very call over which he is now suing. Golden

Rule is therefore entitled to verify whether Plaintiff visited the website in question from any IP address, particularly given that Plaintiff has submitted an affidavit saying that he did not do so (and apparently intends to say the same thing at trial).

Less than two months ago, the Court agreed with Golden Rule, overruled Plaintiff's objections, and ordered Plaintiff to provide his IP addresses. But Plaintiff now argues that he should not be required to provide the <u>full</u> IP addresses because he worries that the information might be used to manufacture evidence against him. Instead, he proposes that Golden Rule should present <u>him</u> with IP addresses that it wants to check, and <u>he</u> will confirm whether they match one of Plaintiff's addresses.

Golden Rule understands why Plaintiff would like to control access to this critical evidence, but he does not get that unilateral right under the Federal Rules of Civil Procedure. Plaintiff offers no proof that evidence has been or will be manufactured in this case, nor any legal basis for the view that merely incanting such a "concern" allows a party to stonewall highly relevant discovery. Indeed, Plaintiff's position—"I don't trust you, so you'll just have to trust me instead"—turns the discovery process on its head. The Federal Rules recognize that parties to a lawsuit almost certainly will not trust each other, and that the solution to that distrust is permitting more access to relevant discovery, not less access. The Court should apply the same solution here: it should deny Plaintiff's Motion while authorizing appropriate protections for the disclosure and use of the information under the protective order already issued in this case.

## II.   LEGAL STANDARD

"The party seeking a protective order has the burden to show good cause for it." *Felling v. Knight*, 211 F.R.D. 552, 554 (S.D. Ind. 2003). Upon this showing of good cause, the Court may issue a protective order to protect parties or persons from "annoyance, embarrassment,

oppression, or undue burden or expense." *Symons Intern. Grp., Inc. v. Continental Cas. Co.*, 2015 WL 1279839, at *2 (S.D. Ind. Mar. 20, 2015) (citing Fed. R. Civ. P. 26(b)(2)(c)). To determine whether such protection is appropriate, the Court considers factors such as "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." *Id.*

### III. ARGUMENT

Plaintiff has failed to show "good cause" for the entry of a protective order for several reasons: (1) his Motion effectively asks the Court to reconsider its previous discovery order; (2) his purported distrust of Golden Rule cannot justify the one-sided protocol he proposes; and (3) his concern about manufactured evidence is unfounded and can be addressed by the existing protective order.

#### A. The Court Has Already Ordered that the IP Addresses Should be Produced.

This Court already ruled that Plaintiff's IP addresses should be produced. The parties filed a Joint Submission on February 4, 2020, identifying as one of their discovery disputes:

> **Interrogatory 14:** This Interrogatory seeks the Internet Protocol (IP) address that Plaintiff has used to connect to the internet since January 1, 2019. (Ex. 1.) Plaintiff objected on the basis of relevance, burden, and harassment. (*Id.*)

(Dkt. 58.) On February 5, 2020, this Court convened a teleconference to hear argument on the discovery disputes. (*See* Dkt. 60.) On that call, the parties argued their respective positions about the IP addresses. (*Id.*) At the conclusion of the hearing, the Court asked the parties whether they wished to further brief the arguments prior to the Court's ruling, and the parties indicated they did not need further briefing. The next day the Court issued an Order stating:

> The court heard arguments of counsel and, for the reasons stated on the record, ***overruled the plaintiff's objections outlined in the parties' submission at Dkt. 58.*** The plaintiff is directed to serve the responses by February 26, 2020. Counsel

3

> shall confer further regarding the subject IP addresses, and if they cannot agree to a protocol, the plaintiff must file a motion for protective order.

(*Id.*) (emphasis added.)

Plaintiff's current Motion for a Protective Order is, in effect, an improper motion for reconsideration of the Court's February 6, 2020 order, insofar as it reargues the same burden and harassment objections that the Court already overruled. The narrow focus of this motion is whether Plaintiff should be allowed to produce only partial IP addresses or whether he should turn over complete IP addresses, as Golden Rule requested.

### B. Plaintiff's Purported Distrust Of Golden Rule Cannot Justify The One-Sided Protocol He Proposes.

Perhaps due to the Court's previous order, Plaintiff does not challenge the relevance of his IP addresses to this litigation. Not only are the addresses relevant, in fact, they are <u>central</u> to Golden Rule's claims and defenses. Golden Rule has the right to investigate, among other things, whether Plaintiff ever visited the U.S. Insurance Online website, at any time, using one of his IP addresses; how, when, and on what devices Plaintiff uses those addresses; whether other individuals have access to the IP addresses; and whether Plaintiff has used any software to modify or "spoof" his IP address.

Given the undisputed relevance of the information, Plaintiff seeks to prevent disclosure another way. He asserts without evidence that Golden Rule or another third party might end up using the information to manufacture evidence of a website visit, and therefore, the full IP addresses should stay with him. If Golden Rule thinks it has a match, it can ask Plaintiff and he will confirm whether there is a match. The Federal Rules certainly do not contemplate a process for party discovery that places the proverbial fox in charge of the hen house, however, and Plaintiff provides no good cause for that approach here.

4

As an initial matter, Plaintiff has pointed to no evidence that Golden Rule—a subsidiary of a Fortune 500 company, UnitedHealth Group, Inc.—manufactured any evidence or is aware of or authorized any third party to do so. And there is no such evidence. Golden Rule received the relevant information regarding Plaintiff's website visit from a third party, through Golden Rule's third-party vendor, and the discovery into the IP addresses is a good-faith attempt by Golden Rule to confirm that visit. Plaintiff's suggestion that Golden Rule may have manufactured evidence in support of its claims and defenses is wholly unfounded and entirely baseless.

At its essence, Plaintiff's request for a protective order is based on the fact that he does not "trust" Golden Rule. (Pl. Mot. at pp. 8, 9.) Lack of trust, however, is common among litigants (who are, after all, suing each other), and Plaintiff does not cite a single case holding that a subjective and unsubstantiated lack of trust in an opposing party is "good cause" to support the issuance of a protective order or stonewall critically relevant party discovery. *See Nitz v. Lee*, 2015 WL 13657144, at *2 (N.D. Ind., June 22, 2015) (noting that plaintiff failed to cite to any case law in support of his request for a protective order).

Plaintiff's concern about "trust" is especially curious given his proposed protocol, which would force Golden Rule to trust him as the gatekeeper for some of the most critical evidence in the case. Under Plaintiff's proposed compromise of providing partial IP addresses, Golden Rule would be required to approach Plaintiff with an IP address and ask Plaintiff whether there is any "match" with any IP address used by Plaintiff. (Pl. Mot. at pp. 2–4 (offering that "[Plaintiff would] let Defendants know whether there was a match.").) Again, Plaintiff cites no case authorizing this kind of one-sided approach to discovery. As the Court has already held, Golden Rule is entitled to <u>independently</u> test Plaintiff's assertion that he did not visit the website. (Dkt. 60.) Relying on Plaintiff to identify a "match" is not an effective way to test Plaintiff's

5

attestation that he never visited the website and indeed defeats the whole purpose of obtaining the IP addresses.[1]

Furthermore, Golden Rule has the right to obtain Plaintiff's full IP addresses so that it can do additional research into other facts beyond simple "matches." For example, Golden Rule wishes to investigate who controls those IP addresses, where and how Plaintiff accesses them, and other questions, each of which may lead to discovery of additional witnesses and deponents. Golden Rule believes it is possible that someone other than Plaintiff may have entered Plaintiff's information onto the U.S. Insurance Online website at Plaintiff's direction, and it must have the right to fully investigate this theory. In short, possession of the full IP addresses may assist Golden Rule in finding other admissible evidence, and Plaintiff's proposed protocol of providing redacted IP addresses would unfairly hinder Golden Rule's attempts to uncover facts supporting its claims and defenses.

      **C.**      **Plaintiff's Concerns About Manufactured Evidence Are Unfounded And Are More Appropriately Addressed Under This Court's Existing Protective Order.**

Finally, Plaintiff presents no proof that some party <u>other than</u> Golden Rule may have manufactured evidence, and such concerns can be adequately addressed by the Court's existing protective order. At the risk of dignifying Plaintiff's unfounded accusations, Golden Rule briefly responds to his main contentions.

Plaintiff begins by pointing to his own sworn affidavit that he did not provide his contact information to usinsuranceonline.com. (Pl. Mot. at 4; *see also* Dkt. 23.) But there is ample reason to question Plaintiff's veracity. As just one example, discovery has established that

---

[1] To the extent Plaintiff states he is "willing" to submit unredacted IP addresses to the Court under seal to confirm whether there are matches (Pl. Mot. at p. 8), there is no need to burden the Court with this kind of procedure when the Federal Rules provide for full and free disclosure among the parties, and when Plaintiff has not otherwise established good cause for doing so.

6

Plaintiff lied to American Select agent Jessica Perez about his health insurance coverage so that he could obtain information to help set up this lawsuit. Perrong, who is 23 years old, is a dependent/beneficiary on his father's employer's plan and does not pay monthly health insurance premiums. (*See* Declaration of Nathan Brennaman ("NB Decl."), Ex. A, Plaintiff's Supp. Resp. to Interrog. 15.) But when speaking to Ms. Perez, he fabricated virtually everything about his health-insurance status: he falsely told her that he was <u>not</u> insured through an employer plan, that he paid a monthly premium of $275, and that he paid between 20–30% of the cost of his healthcare visits. (*See* NB Decl., Ex. B, Cert. Tr. of April 11, 2019 telephone call between A. Perrong and J. Perez at 4:6-5:14).

As another example, Plaintiff tried to improperly help his mother evade service of Golden Rule's deposition subpoena. The process server served Mrs. Perrong at her work on February 19, 2020, after identifying her based on her website picture and otherwise confirming her identity. (*See* NB Decl., Ex. C, S. Perrong Dep. Ex. 2.) Mrs. Perrong testified at her deposition that she tried to refuse the papers by returning to her office, but her co-workers later put the sealed envelope on her desk. (NB Decl., Ex. D, S. Perrong Dep. at 39:16–40:5.) She called her son Andrew (Plaintiff), who came and picked up the sealed envelope. (*Id*. at 40:6-41:1) It was mailed back to the process server a few days later with the notation on the front of the envelope to the effect of: subject not known. (NB Decl., Ex. C.) Plaintiff thereafter took the position that service had not been accomplished. (NB Decl., Ex. E, February 28, 2020 email from J. Misny to N. Brennaman and others.) Golden Rule has no reason to take Plaintiff's word at face value, given his history, and the Federal Rules ensure that Golden Rule need not do so to prosecute its counterclaim.

The rest of the tangled web that Plaintiff weaves is no more persuasive in demonstrating that evidence has been manufactured or that producing Plaintiff's IP addresses heightens the risk of evidence being manufactured in the future.

- Plaintiff imagines something sinister in the way that Golden Rule's counsel negotiated a possible compromise with respect to the IP addresses. But all that those communications show is Golden Rule's legitimate attempt to obtain the full IP addresses and to use the information to attempt to confirm that Plaintiff visited the usinsuranceonline.com website prior to the April 11, 2019 call at issue in this case, or at other times. (Dkt. 75-1.) Plaintiff's insinuation of unethical conduct is wholly unfounded (and not appreciated).

- The fact that Datamax, LLC ("Datamax") has not appeared in this case proves nothing. Golden Rule does not know why Datamax is in default. Golden Rule has not communicated directly with Datamax about this case either before or after Datamax was served with a third-party complaint.[2]

- As Plaintiff recognizes (Pl. Mot., n. 2), Comcast's response regarding the IP address identified in Golden Rule's counterclaim is inconclusive because the response does not cover the date of the call or the usinsuranceonline.com website visit. And Golden Rule needs to be able to discover whether any differences between Plaintiff's IP addresses and the one provided by the third-party vendor were created by manual-input error or some similar inaccuracy.

---

[2] Golden Rule contracted with GoHealth, LLC for sales of its health insurance products. Golden Rule's understanding is that GoHealth contracted with American Select, which contracted with Datamax.

8

- Plaintiff complains about Golden Rule's discovery responses and privilege log, arguing that the responses are insufficient and that this purported insufficiency somehow supports his theory that evidence was manufactured. Plaintiff's argument rings hollow, given that Plaintiff has never sent Golden Rule a deficiency letter or asked to meet-and-confer about Golden Rule's discovery responses. Golden Rule's discovery responses were not deficient, and the Court should not credit Plaintiff's argument, given his own lack of interest or diligence in pursuing this information.

For these reasons, Plaintiff has not produced any specific evidence of "annoyance," "oppression," or "undue burden" requiring Rule 26 protection. To the contrary, Plaintiff is relying on the kind of generalized concern that cannot support a finding of "good cause" under Rule 26. *See Sanyo Laser Products Inc. v. Arista Records, Inc.*, 214 F.R.D. 496, 503 (S.D. Ind. 2003) ("allegations of general injury are insufficient to constitute good cause," and "the movant must show that disclosure will cause a clearly defined and serious injury"); *State Farm & Cas. Ins. Co. v. Nokes*, 263 F.R.D. 518, 521 (N.D. Ind. 2009) (plaintiff failed to show good cause or that it would suffer any specific harm).

Finally, the protective order that has already been issued in the case (Dkt. 37) is sufficient to address Plaintiff's concerns about his IP addresses. *See Chalmers v. Gray*, 2010 WL 11575056, at *4 (N.D. Ind., Feb. 17, 2010) (finding the agreed protective order "sufficient to protect the [d]efendants from any misuse of the disclosed information by [plaintiff]."). Indeed, the very purpose of a protective order is to enable the production of a party's most sensitive information, and parties disclose such information to an opposing party under the terms of a protective order <u>all the time</u>. Plaintiff can mark the IP addresses "Confidential" to ensure that they are not shared with non-parties. As for his concerns about the IP addresses being shared

with Datamax, Golden Rule has no contact with Datamax in any event, and Datamax has not even appeared in the litigation. If Datamax appears, moreover, Plaintiff could conduct full discovery into its "manufactured evidence" theory, thereby mitigating any concern over the sharing of IP addresses.

*   *   *

Here, the factors for evaluating requests for protective orders all weigh in favor of denying Plaintiff's motion because: 1) the importance of the disputed information to resolution of the claims is very high; 2) the dollar amount at stake in this class action claim is very high; and 3) the burden of producing the data is minimal because the IP addresses have already been gathered by Plaintiff. *Symons* 2015 WL 1279839, at *2 (listing factors to consider for evaluating motions for a protective order). Accordingly, the Court should reject Plaintiff's proposal to produce partial IP addresses and instead order that they be produced to Golden Rule within 7 days.

## IV.   CONCLUSION

For the reasons above, Plaintiff's motion for a protective order should be denied.

Dated: March 30, 2020          **FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Erin L. Hoffman*
Erin L. Hoffman, #0387835
Nathan Brennaman, # 0331776
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Tel: (612) 766-7000
Fax: (612) 766-1600
erin.hoffman@faegredrinker.com
nate.brennaman@faegredrinker.com

Amy G. Dunn, #34428-29
Susanne A. Johnson, #31338-64
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204-1750
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
susanne.johnson@faegredrinker.com
amy.dunn@faegredrinker.com

*Attorneys for Defendant Golden Rule Insurance Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 30, 2020, the foregoing pleading was filed electronically. Notice of this filing will be sent to the following counsel of record through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

>Anthony I. Paronich
>Paronich Law, P.C.
>350 Lincoln Street, Suite 2400
>Hingham, MA 02043
>anthony@paronichlaw.com
>
>Jonathan P. Misny
>Murray Murphy Moul + Basil LLP
>1114 Dublin Road
>Columbus, OH 43215
>misny@mmmb.com
>*Attorneys for Plaintiff Andrew Perrong*
>
>Charles W. Gameros, Jr.
>Hoge & Gameros, LLP
>6116 N. Central Expressway, Suite 1400
>Dallas, TX 75206
>BGameros@LegalTexas.com
>*Attorney for Defendant American Select Partners, LLC*

*/s/ Erin L. Hoffman*