UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANDREW PERRONG, on behalf of himself and others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>GOLDEN RULE INSURANCE COMPANY,<br><br>    Defendant, and<br><br>AMERICAN SELECT PARTNERS, LLC,<br><br>    Defendant/Third-Party Plaintiff,<br><br>v.<br><br>DATAMAX, LLC,<br><br>    Third-Party Defendant. | Case No. 1:19-cv-1940-TWP-DML<br><br>CLASS ACTION |

**PLAINTIFF ANDREW PERRONG'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

Golden Rule still has not made a showing of why it would need full IP addresses, as opposed to redacted IP addresses, to do any of the discovery it claims it wants to do. Golden Rule primarily claims that it wants to determine whether Plaintiff visited usinsuranceonline.com, but it will be able to so under Plaintiff's proposed protocol. The subpoena Golden Rule issued to All Web Leads, Inc. ("All Web Leads") will reveal the IP address information associated with any submissions on that website with any of Plaintiff's phone numbers. If any of those IP addresses match the redacted IP addresses, Plaintiff's counsel will reveal the full IP address. Once Golden Rule has the full IP address under Plaintiff's proposed protocol, Golden Rule can

do whatever it wants with it.

Consistent with its approach throughout this litigation of attacking Plaintiff while turning a blind eye to the conduct of its own telemarketing vendors, despite it being Golden Rule's burden to prove its defense of prior express consent for the putative class members, Golden Rule's subpoena only asked for information about submissions to usinsuranceonline.com with *Plaintiff's* phone numbers. Plaintiff's subpoena to All Web Leads went further than Golden Rule's subpoena in terms of investigating the legitimacy of leads generated by All Web Leads by asking for, among other things, the "access, server and error logs and security and fraud alerts" for the website. (*See* Plaintiff's Subpoena to All Web Leads, attached hereto as Exhibit 1, Request No. 5.) Those documents will reveal all IP addresses that visited the website, so even if Plaintiff visited the website but did not submit information (which he did not do), Golden Rule will still be able to obtain the full IP address under Plaintiff's proposed protocol.

Golden rule also makes a vague claim that it "has the right to investigate … how, when, and on what devices Plaintiff uses those addresses; whether other individuals have access to the IP addresses; and whether Plaintiff has used any software to modify or 'spoof' his IP address." (*See* Doc. 82, p. 4.) But Golden Rule does not even try to explain why it would need a full IP address as opposed to a redacted one to do this discovery, because it cannot. Moreover, it should be noted that an IP address with the last two sections redacted will still fully identify the network accessing the internet. The only thing being redacted is the part of the IP address that uniquely identifies the particular host machine. And despite not identifying anything thus far, if there is truly some discovery Golden Rule needs a full IP address to do, it will be able to do that discovery as long as there is first evidence the IP address matches with other relevant evidence in the case from Golden Rule's vendors.

While not ever explaining why it needs a full IP address as opposed to a redacted one pursuant to Plaintiff's protocol, Golden Rule fills the rest of its motion with discussion of why it can't trust Plaintiff versus why it should be trusted.  Ironically, in the same breath it claims Plaintiff cannot be trusted, Golden Rule deliberately misrepresents Plaintiff's proposal to the Court.  Plaintiff's proposal is not for Plaintiff to be the one confirming whether or not an IP address matches.  It is for Plaintiff to provide all the IP addresses to his counsel, and for his counsel to be the ones that verify whether there is a match.  Golden Rule makes no arguments that Plaintiff's counsel are untrustworthy because there are no such arguments to be made.  So instead, Golden Rule substituted "Plaintiff" in for "Plaintiff's counsel" with brackets and proceeded to attack Plaintiff's trustworthiness, which is not at all relevant to Plaintiff's Motion for Protective Order.  (*See* Doc. 82, pp. 3-4.)  Whether his counsel safeguard the information or whether the information is produced directly to Golden Rule in full, it is still ultimately up to Plaintiff no matter what to gather and produce the information with integrity.  So if Golden Rule's concern is that Plaintiff will not be truthful, getting the full IP addresses does absolutely nothing to alleviate that concern.

Golden Rule's discussion of why *it* should be trusted actually bolsters Plaintiff's claim of why it is so important to protect the full IP addresses from disclosure.  Golden Rule boasts that it is a Fortune 500 company that would never do anything wrong because it is so big, but by tying a company's trustworthiness to its size, it actually strengthens Plaintiff's argument that the series of downstream vendors Golden Rule relies upon—who are much smaller entities and individuals, some of whom are practically judgment-proof and some of whom are actively refusing to participate in this lawsuit—should not be given an opportunity to manufacture evidence for a second time.  Indeed, the reality is that the reason Golden Rule finds itself in this

litigation is not because it was "set up" but because it accepts the benefits of telemarketing while failing to monitor the conduct of its own downstream telemarketing vendors. Then, immediately after boasting of its trustworthiness due to its Fortune 500 status, it continues to *hide* from Plaintiff and from the Court where the information that it relies upon to assert its Counterclaim came from. In this regard, Golden Rule claims "Golden Rule received the relevant information regarding Plaintiff's website visit from a third party, through Golden Rule's third-party vendor, and the discovery into the IP addresses is a good-faith attempt by Golden Rule to confirm that visit."[1] (*See* Doc. 82, p. 5.) Plaintiff is not the one "stonewalling" discovery, as Golden Rule repeatedly claims. He has proposed a common sense proposal to redact a portion of his IP addresses to ensure the integrity of evidence in this proceeding. The party actually stonewalling discovery on the issues raised by Golden Rule's Counterclaim is Golden Rule, which continues to refuse to disclose the source of the information in its Counterclaim or produce in discovery literally *anything* it relied upon or that it continues to rely upon to assert purportedly in good faith that Plaintiff visited usinsuranceonline.com.

Finally, Golden Rule claims repeatedly that the Federal Rules don't provide for Plaintiff's proposed protocol, but Golden Rule is wrong, and also misses the point. As Plaintiff explained in his opening brief, Rule 26(c)(1) specifically authorizes the Court to "specif[y] terms … for the disclosure or discovery" or "prescrib[e] a discovery method other than the one selected by the party seeking discovery." Fed. R. Civ. P. 26(c)(1)(B)-(C). Plaintiff has proposed terms for disclosure and an alternative discovery method and has shown good cause for doing so. The Court, in the exercise of its broad discretion to manage the discovery process, should grant

---

[1] This statement is directly contrary to Golden Rule's counsel's statement cited in Plaintiff's opening brief, where he stated discovery into Plaintiff's IP addresses would be to see if Plaintiff visited usinsuranceonline.com at other times (since Golden Rule already knows the IP address in the Counterclaim is not one Plaintiff will be disclosing) and "wouldn't confirm anything about this call [the single call at issue in this case]." (*See* Doc. 75, p. 3.)

4

Plaintiff's Motion for a Protective Order in order to protect Plaintiff from the extreme reputational harm that would befall Plaintiff if his full IP addresses are used to manufacture more false evidence against him and to promote the integrity of evidence yet to be produced in this case.

Respectfully submitted,

/s/ Jonathan P. Misny
Jonathan P. Misny
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH  43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
misny@mmmb.com

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: 508.221.1510
anthony@paronichlaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2020, I served the foregoing document on all counsel of record who have entered an appearance via the Court's CM/ECF system.

/s/ Jonathan P. Misny
Jonathan P. Misny
